IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

VANESSA SHEROD *AS ADMINISTRATOR*
*OF THE ESTATE OF ELIZABETH WILES,*
*AND IN HER OWN RIGHT*,

        Plaintiff,

        v.

COMPREHENSIVE HEALTHCARE
MANAGEMENT SERVICES, LLC
*doing business as* BRIGHTON
REHABILITATION AND WELLNESS
CENTER, ET AL.,

        Defendants.

20cv1198
ELECTRONICALLY FILED

**MEMORANDUM OPINION**

Defendants removed this negligence, misrepresentation, wrongful death and survival action, originally filed in the Court of Common Pleas of Allegheny County, Pennsylvania, to this Court, asserting federal question jurisdiction.  Specifically, Defendants based their removal of this case on the Public Readiness and Preparedness Act ("PREP Act"), and now argue that the PREP Act completely preempts the claims asserted by Plaintiff in her Complaint.  Plaintiff filed a Motion to Remand this matter back to state court (ECF 10), Defendants filed a Brief in Opposition (ECF 22), and Plaintiff filed a Reply (ECF 29) making the matter ripe for adjudication.

**I. Standard of Review**

Except as otherwise expressly provided by Act of Congress, any civil action brought in a state court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the

district and division embracing the place where such action is pending.  28 U.S.C.A. § 1441(a).

If at any time before final judgment it appears that the district court lacks subject matter

jurisdiction, the case shall be remanded.  28 U.S.C. § 1447(c).

      The presence or absence of federal-question jurisdiction is governed by the "well-pleaded

complaint rule," which provides that federal jurisdiction exists only when a federal question is

presented on the face of the plaintiff's properly pleaded complaint.  *Gully v. First National Bank*,

299 U.S. 109, 112-113 (1936).  "The '[well-pleaded complaint] rule' makes the plaintiff the

master of the claim; he or she may avoid federal question jurisdiction by exclusive reliance on

state law.  *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).

      However, the "complete [or artful] pre-emption doctrine" applies where the pre-emptive

force of a statute is so extraordinary that it "converts an ordinary state common-law complaint

into one stating a federal claim for purposes of the well-pleaded complaint rule."  *Metropolitan*

*Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987).  "If a court concludes that a plaintiff has 'artfully

pleaded' claims [by omitting to plead necessary federal questions], it may uphold removal even

though no federal question appears on the face of the plaintiff's complaint . . . where federal law

completely preempts a plaintiff's state-law claim."  *Rivet v. Regions Bank of Louisiana*, 522 U.S.

470, 475 (1998).

      Removal is "strictly construed, with all doubts to be resolved in favor of remand."

*Brown v. Jevic*, 575 F.3d 322, 326 (3d Cir. 2009) (citations omitted); s*ee also Samuel-Bassett v.*

*KIA Motors Am., Inc.*, 357 F.3d 392, 396, 403 (3d Cir. 2004) (citations omitted).  The removing

party bears the burden of showing that removal is appropriate.  *Frederico v. Home Depot*, 507

F.3d 188, 193 (3d Cir. 2007).

## II.  Background [1]

Plaintiff sued Defendants alleging that the decedent, Elizabeth Wiles, died from COVID-19 ("the virus") on May 10, 2020, after being exposed to, and infected by, the virus while working at Brighton Rehabilitation and Wellness facility ("Brighton") in Beaver County, Pennsylvania.  ECF 1-1, ¶ 1-4.  Plaintiff further alleged that the Brighton viral outbreak, "at its peak . . . accounted for 65% of all COVID-19 cases and 90% of all COVID-19 deaths in Beaver County, Pennsylvania."  Id., ¶ 6.  Plaintiff also alleged that Defendant Brighton had been cited numerous times since 2014 by Pennsylvania's Department of Health for various "infection-contamination" risk violations, and was among one of the most fined nursing homes in Pennsylvania from March of 2017 to July of 2018.  Id., ¶ 70.

Plaintiff alleged that Defendants' "systemic failure and outright refusal to protect . . . workers" despite Defendants' knowledge of the nature of the threat that COVID-19 posed to their workers, and that Defendants' "pattern of wanton and reckless conduct would leave workers exposed" to COVID-19.  Id., ¶ 72-76.  Plaintiff further claimed that Defendants knew or should have known that their workers (including decedent) would require personal protective equipment ("PPE"), but failed to provide or require PPE, and further, downplayed the danger posed by COVID-19.  Id., 78-79.   Finally, Plaintiff alleges that in March of 2020, Brighton had its "first COVID-19 case" but this information was withheld from the Brighton workers, residents, government officials, and public-at-large until April 1, 2020.   As of April 1, 2020, Brighton allegedly had three residents who died from COVID-19, thirty-six known infected residents and six known infected facility workers.  Id., ¶ 86.

Plaintiff has sued Defendants for negligence averring that Defendants:

---

[1] The facts as set forth herein are recitations of what is alleged in Plaintiff's Complaint and are accepted as true solely for the purposes of adjudicating the instant Motion to Remand.

a. Ignor[ed] the risk of COVID-19 infection to workers at Brighton;

b. Allowed sick and exposed staff and workers to work at the facility;

c. Fail[ed] to provide workers with any equipment to help prevent the spread of COVID-19 at Brighton;

d. Intentionally ignor[ed] the fact that staff, workers and residents at the Brighton were infected with and/or were displaying symptoms consistent with COVID19;

e. Fail[ed] to provide appropriate PPE at Brighton prior to April 2, 2020 and thereafter;

f. Fail[ed] to provide workers with any equipment to help prevent the spread of COVID-19 at Brighton;

g. Fail[ed] to close Brighton, despite the fact that Defendants knew, or should have known, that workers and residents at the facility were suffering from COVID-19;

h. Fail[ed] to close the Brighton, despite the fact that Defendants knew, or should have known, that staff, workers and residents at the facility were suffering from symptoms consistent with COVID-19;

i. Fail[ed] to report the Brighton outbreak before April 1, 2020, when the facility already had several deaths and numerous positive cases;

j. Fail[ed] to initiate timely and adequate quarantine of COVID-19 infected staff, workers and residents to protect uninfected staff, workers and other residents;

k. Fail[ed] to call for assistance from Commonwealth, Federal and/or other specialized agencies despite being aware of the magnitude of the Brighton outbreak;

l. Fail[ed] to follow guidance from WHO [the World Health Organization], CDC [the Centers for Disease Control] and OSHA [the Occupational Safety and Health Administration] to require the use of masks and other PPE;

m. Continu[ed] to schedule and require the attendance of workers that Defendants knew or should have known were positive for, likely infected by or would likely test positive for COVID-19;

n. Continu[ed] to schedule and require the attendance of workers that Defendants knew or should have known were at high risk for severe COVID-19 infection/death;

o. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating and/or enforcing social distancing guidelines at Brighton;

p. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill report their symptoms;

q. Fail[ed] to follow federal guidance from the CDC and OSHA by not mandating that workers who were feeling ill stay home from work and self-quarantine;

r. Fail[ed] to require workers to maintain physical/social distance at a minimum 6 feet apart;

s. Fail[ed] to implement policies and procedures that mandated workers keep 6 feet apart;

t. Fail[ed] to provide workers with gloves, masks and/or PPE;

u. Fail[ed] to provide workers with clear guidelines for social distancing;

v. Fail[ed] to provide training on proper techniques for handwashing;

w. Fail[ed] to provide training on proper use of PPE;

x. Fail[ed] to provide training on proper glove use protocol;

y. Fail[ed] to ensure functional and stocked handwash stations as required by Pennsylvania and federal laws and regulations;

z. Fail[ed] to ensure proper and safe storage of soiled linens and other biohazardous waste/biohazards;

aa. Fail[ed] to ensure the facility had adequate staff and workers to ensure that all proper precautions could be taken to avoid the spread of infection;

bb. Fail[ed] to provide adequate support to staff and workers at Brighton to make sure the workers were able to comply with all requirements to stop the spread of COVID-19;

cc. Enforc[ed] and/or maintain[ed] a formal and/or informal 'work while sick' policy at the Brighton [facility];

dd. Fail[ed] to properly sanitize or otherwise disinfect Brighton, despite the fact that workers and residents at the facility were falling ill;

ee. Fail[ed] to ensure that the kitchen facilities were properly sanitizing pots, pans and food service items to prevent the spread of COVID-19;

ff. Fail[ed] to perform temperature checks on workers arriving at Brighton before they were allowed inside the facility;

gg. Fail[ed] to timely close the facility to outside, non-staff/worker visitors to prevent COVID-19 from entering the facility;

hh. Fail[ed] to meaningfully, systematically, and permanently address and correct the years of repeated sanitation violations before the Brighton outbreak despite warnings from the Pennsylvania Department of Health that the violations could spread infection at the facility;

ii. Fail[ed] to train workers to address and correct the years of repeated sanitation violations before the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infections at the facility;

jj. Fail[ed] to meaningfully, systematically, and permanently address and correct the years of repeated infection control violations the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infection at the facility;

kk. Fail[ed] to train workers to address and correct the years of repeated infection control violations before the Brighton outbreak, despite warnings from the Pennsylvania Department of Health that the violations could spread infections at the facility;

ll. Violat[ed] federal and state guidelines and requirements related to COVID-19 prevention in the workplace;

mm. Violat[ed] OSHA regulations, including OSHA 1910.132, related to the use of PPE;

nn. Breach[ed] their duties under various sections of the Restatement (Second) of Torts, including, but not limited to, § 340, et seq.; § 341, et seq.; and § 500, et seq.;

oo. Fail[ed] to provide Elizabeth Wiles with a safe place to work;

pp. Allow[ed] workers at the facility, including Elizabeth Wiles, to become infected by COVID-19 while working at Brighton;

6

qq. Fail[ed] to properly train and supervise management, staff and other workers about the danger posed by COVID-19 and the necessary methods to prevent infection;

rr. Fail[ed] to properly train and supervise management, staff and other workers about federal and state guidelines regarding COVID-19 and federal and state guidelines to prevent COVID-19 infection;

ss. Fail[ed] to warn Elizabeth Wiles and other workers at Brighton of the danger posed by COVID-19;

tt. Fail[ed] to adopt, enact, employ, and enforce proper and adequate safety programs, precautions, procedures, measures, and plans;

uu. Fail[ed] to provide workers with safety equipment;

vv. Actively [denied] workers N95 masks to protect themselves from the spread of COVID-19;

ww. Fail[ed] to provide workers with adequate safety equipment;

xx. Fail[ed] to properly supervise and inspect the work at Brighton;

yy. Fail[ed] to prevent workers at Brighton from being infected by COVID-19;

zz. Fail[ed] to provide proper training on how to combat an airborne virus;

aaa. Fail[ed] to hire and/or select appropriate individuals for managerial positions;

bbb. Fail[ed] to conduct appropriate safety surveys of the facilities before the virus to address practices that could cause contamination and spread infection;

ccc. Fail[ed] to hire appropriate consultants for how to respond to an airborne virus;

ddd. Fail[ed] to timely obtain appropriate PPE materials to protect workers.

eee. Fail[ed] to properly consider the safety of members of the public that would come into contact with those who worked at the facility; and

fff. Failure to express due care under the circumstances described herein.

Id., ¶ 122.  In addition, Plaintiff also raised claims of fraudulent and intentional

misrepresentation, as well as wrongful death and survivor claims.  Id., ¶ 125-172.

In response to the allegations and claims set forth in Plaintiff's Complaint, Defendants

filed a Notice of Removal to this Court and in doing so, asserted "federal question" as their sole

basis for federal jurisdiction.  ECF 1-5.

Plaintiff's filed a Motion for Remand (ECF 10) arguing that this case does not belong in

federal court because despite Defendants' removal notice, there is no federal question raised by

Plaintiff in her Complaint nor any claim that could be preempted by federal law.  Defendants

filed a Brief in Opposition to Remand (ECF 22) and Plaintiff filed a Reply (ECF 29).

**III. Analysis**

Defendants, who bear the burden of proving that this case presents a federal question and

belongs in Federal Court, suggest that a federal question has been presented on the face of

Plaintiff's Complaint; specifically, that the allegations raised by Plaintiff's Complaint implicates

the Public Readiness and Protection Act ("PREP Act"), 42 U.S.C.A. § 247d et. seq.  In a

nutshell, Defendants argue, "[b]ased on the Complaint, this case is about *how* Brighton used and

administered countermeasures to prevent the spread of COVID-19 at the facility."  ECF 22, p. 3

(emphasis in original).  Defendants further suggest that the PREP Act "provides federal

continuity and civil immunity against claims . . . that involve *how* countermeasures are used or

administered."  Id. (emphasis in original).

In further support of their position, Defendants supplied an Opinion letter issued by

Robert Charrow, the General Counsel for the Secretary of Department of Health and Human

Services.  ECF 22-1.  In this letter, Mr. Charrow "conclude[d] that senior living communities are

'covered persons' when they provide a facility to administer or use a covered countermeasure in

8

accordance with the Secretary's March 10, 2020 Declaration under the PREP Act." Id. (citations omitted). In a footnote, Mr. Charrow also explained that his letter "address[ed] only whether senior living communities can be 'covered persons'" and further noted that in order to "receive PREP Act immunity, the covered person must satisfy other requirements of the PREP Act and the Secretary's declaration under the Act." Id. Based in part on this letter, Defendants contend that Plaintiff's claims are completely preempted by the PREP Act because Brighton is a "covered person" under the PREP Act and because Plaintiff's Complaint alleges that decedent died as a result of the purportedly insufficient countermeasures Brighton utilized.

Defendants also urge this Court to interpret the PREP Act as pre-emptive in order to prevent varying interpretations of the PREP Act by various state courts across the country. Defendants suggest that complete preemption is called for by the Act itself and as interpreted by Supreme Court case law related to preemption.

Plaintiff's response to the complete preemption arguments raised by Defendants is two-fold. First, Plaintiff argues that the Act itself expressly limits this Court's subject matter jurisdiction; and second, Plaintiff notes that two other United States District Courts have considered the preemption argument and have determined that the PREP Act does not preempt claims of this nature.

### A. Complete Preemption[2]

This Court begins its analysis by examining the concept of federal preemption. Federal preemption is ordinarily a defense, and as such, can be raised by a defendant in a state court. However, "[o]nce an area of state law has been completely pre-empted, any claim purportedly based on that pre-empted state-law claim is considered, from its inception, a federal claim, and

---

[2] Because complete preemption is the basis upon which Defendants assert federal jurisdiction, express preemption and conflict preemption will not be addressed.

therefore arises under federal law." *Rivet,* 522 U.S. at 476, citing *Caterpillar*, 482 U.S., at 393. As noted above, the artful pleading doctrine will allow removal where federal law completely preempts a plaintiff's state-law claim, even if a plaintiff tries to plead the matter in such a way so as to remain in state court and avoid federal jurisdiction.  *Met. Life,* 481 U.S. at 65.   "It is clear from the Supreme Court case law that the doctrine of complete preemption operates in a very narrow area."  *Ry. Labor Executives Ass'n v. Pittsburgh & Lake Erie R. Co*., 858 F.2d 936, 942 (3d Cir. 1988).

In concluding that a claim is completely preempted, a federal court must find that Congress desired not just to provide a federal defense to a state-law claim but also to replace the state-law claim with a federal law claim, thereby giving a defendant the ability to seek adjudication of the claim in Federal Court.  14C Fed. Prac. & Proc. Juris. § 3722.2 (Rev. 4th ed.).

The United States Court of Appeals for the Third Circuit provided a two-step framework for district courts to use when determining whether state law claims have been completely preempted by federal law.  *Ry. Labor Executives Ass'n*, 858 F.2d at 942.  This Court must first ask whether the statute relied upon by Defendants (here, the PREP Act) contains civil enforcement provisions within the scope of which Plaintiff's state claims fall.  If the PREP Act contains no federal cause of action vindicating the same interest Plaintiff's state cause of action seeks to vindicate, recharacterization of Plaintiff's state law claims as a federal claim(s) is not possible, and there is no claim arising under federal law to be removed and litigated in the federal court.

Even if there is a civil enforcement provision and Plaintiff's state claims fall within it, this Court must further inquire whether there is a clear indication of a Congressional intention to permit removal despite Plaintiff's exclusive reliance on state law.  If there is no affirmative

indication of the requisite Congressional intent to permit removal, there can be no "complete preemption."

Thus, this Court now turns to the PREP Act to consider its content and whether Congress did, in fact, intend to create an exclusive federal cause of action which would completely preempt certain state law claims, specifically those raised by Plaintiff in her Complaint.

### B. The PREP Act

In a nutshell, the PREP Act empowers the Secretary of the Department of Health and Human Services to deem an event a "public health emergency" and then take action to utilize funds established by the Treasury to manage the emergency. 42 U.S.C.A § 247d(a). The Act further provides the Secretary with the authority to "facilitate and accelerate, as applicable, advanced research and development of security countermeasures . . . qualified countermeasures . . . or qualified pandemic or epidemic products . . . that are applicable to the public health emergency or potential public health emergency . . .". 42 U.S.C.A § 247d(b)(2)(C).

The term "qualified countermeasure" means a drug . . . biological product . . . or device . . . that the Secretary determines to be a priority – [1] to . . . prevent . . . any biological agent (including organisms that cause an infectious disease) . . . that may cause a public health emergency affecting national security . . ." . 42 U.S.C.A. § 247d-6a(a)(2)(A). The term "infectious disease" means a disease potentially caused by a pathogenic organism (including a . . . virus . . .) that is acquired by a person and that reproduces in that person.

The PREP Act further indicates, "a covered person shall be immune from suit and liability under Federal and State law with respect to all claims for loss caused by, arising out of, relating to, or resulting from the administration to[,] or the use by[,] an individual of a covered countermeasure if a declaration under subsection (b) has been issued with respect to such

11

countermeasure." 42 U.S.C.A. § 247d-6d(a)(1).  However, the Act also provides an exception to the immunity provision for covered persons which reads as follows:

> Subject to subsection (f), the sole exception to the immunity from suit and liability of covered persons set forth in subsection (a) shall be for an exclusive Federal cause of action against a covered person for death or serious physical injury proximately caused by willful misconduct, as defined pursuant to subsection (c), by such covered person.

42 U.S.C.A. § 247d-6d(d)(1).   The term "willful misconduct" denotes an act or omission that is taken – [1] intentionally to achieve a wrongful purpose; [2] knowingly without legal or factual justification; and [3] in disregard of a known or obvious risk that is so great as to make it highly probable that the harm will outweigh the benefit. 42 U.S.C.A. § 247d-6d(c)(1)(a).

This Court adopts the succinct summary of the PREP Act as set forth by the United States District Court for the District of Kansas as follows:

> In sum, the PREP Act creates immunity for all claims of loss causally connected to the administration or use of covered countermeasures, which are certain drugs, biological products, or devices. Exceptions to immunity exist for claims of willful misconduct but suit must be brought in the United States District Court for the District of Columbia. All other claims for injuries "directly caused by the administration or use of a covered countermeasure" must be pursued through the Covered Countermeasure Process Fund. State laws that differ or conflict regarding the administration or use of covered countermeasures are preempted.

*Jackson v. Big Blue Healthcare, Inc.*, No. 2:20-CV-2259-HLT-JPO, 2020 WL 4815099, at *5 (D. Kan. Aug. 19, 2020).

### C.  Plaintiff's Complaint and the PREP Act

Turning to Plaintiff's Complaint, specifically paragraph 122, Plaintiff claims – among other things – that Defendants failed to provide the decedent with qualified countermeasures (such as PPE) causing the decedent to acquire, and ultimately die from, an infectious disease, commonly referred to as COVID-19.  ECF 1-1, ¶ 122.

In their Notice of Removal, Defendants portrayed Plaintiff's claims raised as "relat[ing] to the countermeasures taken by Defendant Brighton to prevent or mitigate the spread of COVID-19." ECF 1, ¶ 22. This characterization of Plaintiff's claims by Defendants is both overbroad and inaccurate. This characterization by Defendants implies that Brighton took countermeasures around the time of decedent's acquisition of the virus and her death due to the virus.

As noted above, the PREP Act creates immunity for all claims of loss causally connected to the use of covered countermeasures. The allegations asserted by Plaintiff in her Complaint directly suggest that the decedent died because Brighton failed to use countermeasures. Plaintiff further alleges that Brighton's failure to utilize countermeasures caused the death of the decedent. Simply stated, Plaintiff's negligence, misrepresentation, wrongful death and survivor claims are not causally connected to Brighton's use of covered countermeasures. Thus, Plaintiff's allegations do not fall within the purview of the PREP Act.

Just like the plaintiffs in *Jackson,* Plaintiff, here, alleges decedent died of COVID-19 because Defendants failed to take preventative measures and failed to utilize covered countermeasures to "stop the entry and spread of COVID-19 within the facility." 2020 WL 4815099, at *6. Defendants argument suggests that its failure to provide (and/or require its workers to use) adequate protection/countermeasures, invokes the PREP Act, removes this case to federal court, and ultimately renders Brighton immune from suit. This Court finds that because Plaintiff's Complaint alleges that Brighton failed to provide decedent with any protection/countermeasures, Plaintiff's claims fall outside the purview of the PREP Act which purports to provide immunity to facilities like Brighton when a claim is brought against them for the countermeasures the facility actually utilized.

This Court is not alone in its interpretation of the PREP Act.  In addition to *Jackson*, *supra*, the United States District Court for the District of New Jersey also determined that the PREP Act was "designed to protect those who employ countermeasures, not those who decline to employ them."  *See*, *Estate of Maglioi v. Andover Subacute Rehab. Ctr.*, __F.Supp.3d__ (D.N.J. 2020), 2020 WL 4671091, at *9 (D.N.J. August 12, 2020) ("an interpretation of the PREP Act is consistent with guidance from the Secretary of HHS, who declared that the Act precludes, for example, liability claims alleging negligence by a manufacturer in creating a vaccine, or negligence by a health care provider in prescribing the wrong dose, absent willful misconduct.") (internal citations omitted); *see also, Casablanca v. Mount Sinai Med.Ctr.,* 2014 WL 1043521 at *1 (N.Y. Sup. 2014) (While evaluating the PREP Act in the context of a hospital failing to administer a vaccine for the H1N1 flu to a patient who later contracted and died from the H1N1 flu, the court noted that the hospital's immunity was limited to claims resulting from the administration or use of a covered countermeasure and that "[n]othing is spoken of regarding a decision not to use the vaccine or of a failure to use it.") .

This Court concurs with these decisions' and their conclusions: the PREP Act applies to potentially immunize certain "covered persons" from their actions taken – not from their inactions – to prevent the spread of COIVD-19.

**IV. Conclusion**

The Court will, therefore, GRANT Plaintiff's Motion for Remand.  This case shall be remanded to the Court of Common Pleas for Allegheny County, Pennsylvania.  An appropriate Order shall follow.

By the Court, this 16th day of October, 2020.

s/ Arthur J. Schwab
Arthur J. Schwab
United States District Court Judge

cc:  All ECF Counsel of Record